The decree of his Honor is as follows :
Daniel Ford, by his will dated in 1813, gave all his estate to his wife for life, and at her death to the defendant Elizabeth *475 McElray, the wife of James McElray, and soon after died. His widow took and kept possession of the estate, until her death in 1843, upon which event McElray and wife took possession. The bill charges that the defendant, Elizabeth, was a natural child, born before the marriage of her mother and father, and that the devise to her was void under our Act of 1795, 5 Stat. 271, respecting gifts to a mistress or bastard children, 'for all above one fourth of the estate, of which they claim an account, and that three fourths may be adjudged to them.
I am of opinion that the privilege of avoiding such a gift is personal to the wife and legitimate children, and if they fail to do so, it is not in the power of the next of kin of the donor. It was argued that the terms of the statute are peremptory, that the gift shall be void, for the excess above one fourth. But wherever an instrument is declared to be void, it is universally understood quoad certain persons or purposes. When a deed is declared by statute to be void for want of registration, it is held to be good between the parties to it, and this independently of the terms of any particular statute. A deed void for fraud, will enable the donee to hold the property as against any one but the person defrauded or true owner having the right to impugn it. In Fripp vs. Talbird, 1 Hill Ch. 143, it is said that “when a deed, good betweeen the parties, is said to be void as to creditors, there is a want of exact precision in the language. They may treat it as void — they are not compelled to institute any legal proceedings to avoid it, but may seize the property, as if there were no deed. But until they do seize the property, the deed remains perfectly good.” It can hardly be supposed, if there were a wife and legitimate children exclusively entitled to the property, and they thought proper to acquiesce in what their father and husband had done, that the instrument should be so absolutely void as that the donee should not recover against a stranger, into whose possession the property had come. The instrument is made void as against the wife and legitimate children, and no one else.
Certainly this comes fairly within the rule of construing a law according to its reason and spirit. The instance put by Blackstone, (1 Com. 61,) in illustrating the true meaning of the maxim, cessante rations, cessat et ipsa lex, is this. There was a law, that those who forsook the ship in a storm should forfeit all right in her, and those who remained should have the ship and cargo. This was held not to apply to one who was left on board unable to make his escape from sickness. He was not *476 within the spirit of the law, though within its express letter. So of the case put by Plowden, 466. There was a law that strangers going on the city walls should be put to death, but this was not held to apply, when on a sudden alarm of an attack of enemies, they rushed to the walls to defend them. See Plowden’s remarks, through the whole case, on the equitable construction of laws. Here the manifest object of the statute was to protect the wife and legitimate children, not the next of kin of the donor, as against whom he may give his whole estate to a mistress or a bastard.
Judge Brevard, in his note to the Act, (a) observes that “the wording of this Act leaves it doubtful to what era the fourth fart spoken of in the Act shall have relation, whether to the time of the death of the party making the gift, <fcc. or to the time of the gift, devise, &c.” The same ambiguity exists as to the “persons having a wife or lawful children of his own living” — at what time must they be living? I am of opinion that to give effect to the statute according to its true spirit and intention, this must be taken to mean when the gift is to take effect in possession. If a party, leaving a wife and lawful children, should give his estate by will to a bastard, and the wife and children should afterwards die in the life time of the testator, what wrong was done to those whom the statute was intended to protect, by permitting the gift to the bastard to have effect ? Nature and humanity would require this. So, if in the present case the testator had had legitimate children, and these had died in the life time of the mother, what purpose of the Act would be defeated by sustaining the gift to the natural daughter ? If a testator, having a legitimate and an illegitimate child, should give his whole estate to the legitimate child, with a provision that if he should die under age or without issue, it should go to the bastard, what is there to impugn this disposition in the event of the contingency’s happening'? And in that event who would be entitled to claim? In a case of Breithaupt vs. Bauskett, decided at Edgefield, I think I expressed the opinion that where the wife had not contested such a gift during her life time, her administrator could not do it after her death, in favor of his next of kin. Such would be my present opinion.
It is ordered and decreed that the bill be dismissed with costs.
From this decree an appeal was taken but afterwards abandoned.

 1 Brev. Dig. 68.